with the first case on for argument, which is Cosmopolitan Shipping v. Continental Insurance. Good morning, your honors. Thank you. May it please the court. Thank you for the opportunity to present oral argument in connection with this appeal. This appeal offers the Second Circuit with an opportunity to clear up and uniform a set of patchwork of differing approaches and methodologies utilized by district courts in the 20 years since the Second Circuit decided to override the Burt Richard Box Inc. v. Travelers Property and Casualty Corp. And though the Second Circuit previously ruled on the use of secondary evidence by a policyholder to reconstruct missing or lost policies, the quality, quantity, methodology, and approach to utilize the primary and secondary evidence to ascertain a proven insurance policy's terms and conditions were not addressed by the Burt Richard Box Court. And this case offers that opportunity. Well, but it's not our law. You all agree that it's New York law that governs. Yes, it is, your honor, but as New York... Now, I'm not sure New York law actually should govern, because it's an admiralty case. And admiralty has its own terms for how to do that, but you've all said New York. Now, I don't know if you can do that under admiralty, but in any case, it's your responsibility to bring to us a jurisdiction, and you've said New York, in which you win. So how do you win under New York, since that's the jurisdiction you're claiming? Yes, well, very easily, your honor. So the Burt Richard Box case, which was decided in 2002, did provide the framework for the use of secondary evidence to reconstruct lost policies. Now, what we have here is the district court has already made a very detailed ruling on the applicability... Here there was a trial. The district judge saw the evidence, studied the evidence, made her findings, looked at the secondary evidence that you offered, and was not persuaded. So why should we second-guess that? Well, because again, your honor, the standard of review is a de novo standard of review under the Oscar Cross and Sun case. This standard, and any standard, hasn't the district court, after it's found for you, contrary to the other side, that there was a policy that you acted in due diligence, all of that, but that the policies you submitted were not enough to meet the third requirement of New York of what that policy was. And that's where the district court erred. So the district court did a very thorough analysis of getting up to that point, and was presented with a mosaic, a tile-by-tile presentation of the uniformity and remarkable consistency of bookend policies dating back before the policy period. The problem was that the 1938 one was many, many years before, and though it was the same people, the defendant ultimately, I mean, the shipper was a different one. The 1945 one was the closest one, was the one in which the U.S. was the owner of the ships. None of them were close enough to the court found in the settlement. Well, we disagree. We think that, as a matter of fact, the fact that the 1938 and 1939 policy was before and predated and involved the same insured or at least the same vessel operator in Cosmopolitan and the same insurance company in Continental who insured the UNRRA under the applicable policy, C-4893, the terms were remarkably consistent. The same liability, the same insurance limits. Can I just jump in for a second? I mean, part of what's concerning to me is that these policies are, you refer to them, I think, as remarkable consistency or similarity, but there are certain material terms that are not the same in terms of, for instance, the amount of coverage per vessel, per accident. Those aren't consistent across these exemplars you're giving. So how would we determine what the policy here said? Well, I would disagree with that, Your Honor. I believe the 38-39 policy had a $500,000 limit per vessel and the 1945 policy had a $500,000 limit per accident. The 1956 policy is a specimen policy, so that was a foreign policy by the American Institute of Marine Underwriters, so that did not have a policy limit. So what should the district court have held with respect to? You have to wait until we ask the question. What should the district court have held as to the amount of coverage in this case? There should have been a $500,000 per vessel limit. And only one of the policies had a $500,000 per vessel limit, correct? Correct. So why does, was that the 38-39? The 38-39 policy. So you're saying it was clearly wrong for the district court to rely on a policy from seven, eight years earlier to set the amount when the other two comparators did not have something that was similar? No, no, no. I apologize. I misunderstood, Your Honor. The 38-39 policy had a $500,000 per vessel limit. And so the district court was wrong in... But I understand, but the other two did not. And so you're asking the district court to draw a conclusion to fill a missing term based on three policies, only one of which supports your position. I... So why was it wrong for the district court to say, I am not persuaded? Well, again, because the consistency of the limits did not change over the course of that period. So in the 44 and 45 policy... What does that mean? So the term that this... What are you saying? There was a limit in one policy. Other policies didn't have that. The fact that you're insuring people at sea doesn't tell you anything about what the policy should say. I mean, I'd love to find it, frankly. I really would love to find that you had a policy that was there. And... But I just don't know what that policy would say. Well, again, the terms can be of... C-48-93 can be inferred from the policies in the spreadsheet that was produced to the district court after trial. She was... You say can be inferred. I could infer a million. I can infer 200,000. I can infer anything. I don't have anything to infer from. Again, Your Honor, $500,000 was the limit per vessel under the 38 and 39 policy. In 1938. And then $500,000 per accident on the 44-45 policy, which was right during the time frame 46 to 47. As you're running out of time, why did the district court get it wrong in dismissing the claim against Marsh? Yes. So the district court relied upon a statute of limitations that was completely outside of New Jersey law. The judgment in... It's very clear from the Supreme Court of New Jersey  that damages and the statute of limitations does not begin to run until actual damages are assessed against in a professional negligence claim. Even if that were so, and you haven't shown New Jersey law, and I'm far from sure, but under discovery, that isn't... I don't see how you've shown the duty. I don't see how you've shown the breach of duty. And I don't see how you've shown causation against... You know, I'm an old tortsnick. And I don't see how, with respect to Marsh, you've shown any of the elements of a tortsuit. Well, the district court, Your Honor, ruled on the statute of limitations. I understand, and we can affirm it on any grounds that are available. Correct. And so to answer your question about duty, there was a 1997 memorandum that was authored by Mr. Stan Schiff of Marsh that was sent to a cosmopolitan shipping company at its headquarters in New Jersey. The district court applied New Jersey law in connection with its analysis with the statute of limitations. And so, in the absence of any cross-appeal, we're guided by what the district court applied when she made that determination. And in a professional negligence claim, in which this is, in which the opinion clearly states, the statute of limitations does not begin to run until the assessment of actual damages, which the consent judgment that was entered against cosmopolitan shipping was in September of 2017. So that should have been the proper date. Anything else before that time was purely speculative. Up until that time, cosmopolitan could have resolved the case without incurring any damages. They could have persevered at trial. They could have prevailed in any number of ways. But until that judgment was entered, that was when the professional negligence claim against Mark began to run, and that would have been timely under New Jersey law. Thank you, Your Honors. Mr. Doolin, is that correct? Yes. Thank you so much. You have two minutes for rebuttal. Good morning, Your Honor. My name is Karen Moriarty on behalf of the Appelli Continental Insurance Company. I just want to respond to a few of the issues raised by Mr. Doolin. This is, in fact, not a bookend situation, as Mr. Doolin, or the appellant, has described. And it is supported by New York law as well as the out-of-state law referenced in the reply papers. A bookend situation deals with a policy issued  prior to the time period in question, and then, at the other end, subsequent to that time period, the same insurer issuing a policy to the same insurer. In this case, the two policies, the 1938 policy was issued by Continental Insurance Company of the City of New York to Cosmopolitan France Lines with totally different ships than it issued in this litigation. The subsequent 1945 policy was issued by a consortium of seven insurance companies, one of which was Continental Insurance Company, to the United States of America. And it was a wartime P&I policy, a totally different type of purpose for that policy issued. The policy issued to UNRRA, as described in the papers and as found by the district court, their mission was reparations after the war. And all of these policies had different ships. My question, I hear you and I agree with you, but my question is, how far should a court go in a situation in which the district court has found, contrary to some of your arguments in your brief, that a policy did exist on the basis of the amendments and that there is this evidence that something was there in order to help the people who were injured be covered? That is, really, how far should one stretch to try to figure out what that policy must have been when there is evidence that the policy was there? Well, pursuant to New York case law, the courts in those cases which have found that there has to be evidence of the material issues. And they use prior policies or subsequent policies issued by that insurer to the same insured. They use testimony of either brokers, agents. They can use prior claim files which show that there were actually payments made under the policies. They can use correspondence showing that there were claims made under the policies or there were premiums made under the policies or that the insurer had acknowledged these policies in the past. There could be underwriters. In other words, you're saying a court can do a good deal, but it has to have something. It has to have something, and that just wasn't the case here. Even though they are old policies under Maryland Casualty, that case, it doesn't, the burden is still the same. Whether it's a recent policy or a very old policy, you still have to show that there were, you know, what those material terms were. And whatever the burden is, it wasn't met in this case. And in this case, the judge said that the district court said that they did not even meet the lower standard. So this really is not a case of first impression. The district court ruled that that, you know, she did not decide whether clear and convincing evidence had to be filed or the lower standard because they did not even satisfy the lower preponderance of the evidence standard. And, you know, other than that, you know, I went through, the only other piece of evidence was the form, the policy form that was from 1956, and clearly that was so well beyond the period in question here and there were blanks that over terms that had to be negotiated. So that piece of evidence should also be disregarded. In this case, it's clearly the standard should be clear error for review. It's strictly a factual question. The parties really don't disagree on the law based even on the lower standard that wasn't satisfied. It was clear error. The standard is clear error and the district court did not commit clear error in considering all of the evidence in this case. All the evidence that the parties wanted considered, the court considered. Thank you very much. Thank you. Good morning, Your Honors, and may it please the court. Chris Anchino from Wilkie, Farr, and Gallagher on behalf of the appellee and insurance broker Marsh USA, Inc. Your Honors, as the papers made clear and as we've heard today, the primary issue and dispute in this case was whether or not enough evidence was found of a single insurance policy from 1945 to 1947 which would apply at most to four of the 47 asbestos maritime cases that were settled pursuant to a consent judgment. While the Council for Cosmopolitan was searching for evidence of those policies, it came across an email. The email was found in a file cabinet in a room by the garage of the widow of the former owner of Cosmopolitan. It is a one-page email sent internally at Marsh from a claims advocate. It's not like a really short email. It is arguably a memo. It records that some research was done, some discussion was done. Right? So it's not quite as informal as someone dashing off an email. Agreed, Your Honor. It is one page long. It does recount the advice that was given in the summer of 1995. It was in response to a question from Mr. Conway and the only person who was alive who testified about this was, in fact, Mr. Schiff. He was asked specifically about the Fulton P&I syndicate and whether there was a way to find records. He stated correctly that the records Fulton had didn't go back this far. He also spoke to a lawyer, Dick Bensley, who was known to handle these types of cases and he made a recommendation that they reach out and speak with Mr. Bensley or do other searches. To the point on causation, the court below, the district court The other side argues that under New Jersey law the cause of action doesn't accrue until damages are assessed. Is that true? Do you agree with that? So, Your Honor, we first do not agree that New Jersey law applies at all. Second, the argument that the consent judgment is what entering into the consent judgment in September of 2017 is what triggered the statute was first made in the reply on appeal to this court. It was not raised to the district court. It has been waived but even if that was correct, Your Honor, what the cases say like the case cited by counsel is that there must be some damages incurred. The new theory that was also raised on appeal was that the damage was had they only looked back in 1995 perhaps they could have found some more documents in the National Archives or the rare books section of the New York University Library. There is absolutely no proof of that which is why the court held no causation but if that's the damage, Your Honor, if the damage is you took away from me the opportunity to actually look for records that may have existed at the time that damage arose back in 1995 when the allegedly erroneous advice was provided. The courts made clear including in New Jersey that as long as some damage has accrued the statute of limitations has begun to run and so it would have expired long ago. And just one more point on the actual elements of the claim and I think it's page 831 of the record it's footnote 2 in the court's opinion the district court did find a lack of duty no duty based on the evidence that was presented and no causation and on causation if we go back what they would have to show was that for some reason that email even if it was a memorandum, Your Honor actually was read there is no evidence in the record it was actually read that it lulled Mr. Conway into doing nothing for more than a decade when he did hire counsel in 2006 and while there is a complete absence of evidence of whether anything was done or was not contrary to counsel's arguments the absence of evidence gone perhaps because of the passage of time the reason for the statute of limitations the absence of evidence tells us nothing it doesn't establish nothing was done it just doesn't tell us whether something was or was not done but let's the House cannot have found a policy absolutely Your Honor they wouldn't have found a policy then more probably than not there is no causation exactly right Your Honor We agree that they not only would have to prove that he didn't take steps they would have to prove that had he done so in 1995 the National Archives at that time would have had more information about this policy that somehow got lost and destroyed in the interim and then Your Honor one final step that with those additional pieces of paper there actually would have been coverage for the four maritime asbestos cases that were brought none of that was proven there is no record evidence at all about those issues and so even if the claims weren't time barred and the district court correctly said they were there simply is there is no duty as Your Honor said but there is certainly no way for them to prove causation in this case that they would have recovered under this policy but for what Mr. Schiff did back in 1995 so Your Honor unless there are other questions I'll rest on my paper Thank you Thank you very much Thank you Your Honor just a quick rebuttal just with respect to the Marsh claim the Marsh claim    of the policy in fact the district court did find that the Marsh claim was not determinative of the conclusiveness of the terms of the policy in fact they did find that this policy would cover cosmopolitan vessels that were operated during this time frame and in which the semen the asbestos semen sailed on so there is Is there any evidence in the record that Mr. Conway was lulled into doing nothing by the memorandum Yes or email Yes Your Honor because they they did not do anything until they were summoned by the by the Ohio district court to defend the asbestos the mere fact that they did nothing is the evidence that he was lulled into doing nothing is that the argument the Schiff memorandum was persuasive to and cut off the right of how did it do that because it argued that there was this memorandum said some things but what evidence is there that it was this memorandum which was after all it said there were some things that led them to do nothing it argued for that there was no or it recommended and advised that there was no coverage available so do not even bother to go out and investigate coverage well I'm not sure it said that but even assuming it said that what evidence is there that it was this memorandum that caused them to do nothing because clearly the memorandum presupposes the fact that Mr. Conway asked and relied upon Marsh to provide him with advice and recommendations as to how to handle this claim and the memorandum goes on to say that they that Mr. Schiff on behalf of Marsh did some research into it and here were his findings and recommendations but didn't the memorandum also say to follow up no I don't believe so your honor well it said that for sure that Mr. Schiff would follow up with Dick Binsley who was a defense attorney but there was nothing that came from that and there was nothing concrete other than the argument or the advice to stop and refrain the deposition testimony or Schiff's testimony was that he left a voicemail for Mr. Conway and said let us know if we can do anything more and Mr. Conway never followed up but the memorandum itself contradicts that testimony and that where does it contradict that because the Schiff deposition talks about in his deposition Mr. Schiff talks about oh you need to hire an insurance archaeologist this is a proper thing or a proper job for an insurance archaeologist not once in that email or memorandum does the term insurance archaeologist or insurance archaeology ever apply so the fact that Mr. Schiff let me ask you something else is there any evidence that Marsh was being paid by your client at that time for that advice I believe the repayment was in the expectation of future business with C Corp yeah that's a different issue I asked is there any evidence that he was being paid at that time no your honor but there doesn't need to be so you are saying that if I call up a lawyer or a broker or a banana or something or other and I say hey give me some tell me about this and that person sends me even a detailed memo saying here is what I think hoping that that will get me some business from you that is enough to establish a duty so that if what I give you is not completely accurate and you act out and all these other things happen that is enough to establish a duty absolutely in the context of a professional negligence claim absolutely even when there is no written retention your honor I would love to brief that issue you raised an attorney and absolutely an attorney would have a duty if he rendered professional advice and was asked to do so even in the absence of a formal written retainer letter or a formal written fee letter he would absolutely owe a duty. Anytime I call somebody and ask them for something if they happen to be an expert I call the wife of a friend who happens to be a doctor the wife and I say my wife does not have a profession negligence claim against that person? What you potentially they are at the very least owe a duty at that point under a professional negligence standard yes a just to finish on the fact that the policy terms over the terms of years move at a glacial pace was his  and that was an admission and a concession that the policy terms did not change and were uniform and consistent over the course of many years. I would respectfully submit that the consistency of those terms, the liability, the cooperation that was owed by and between the insurance company and the insured, the bar provisions, they were all remarkably consistent. Even the $200 burial expenses for any affected semen were consistent as between all of those policies, the bookend from 1938 and then to 1956. And I would just conclude, Your Honors, with the fact that this is a very old case and while the burden still rests upon us, clearly there is a determination in the law, Rule 1004, the Federal Rules of Evidence, the George v. Celotex case, that these ancient documents are inherently more reliable and accurate and so should be given more and accorded more deference because their inherent validity is   by the Federal Rules of Evidence. And with that, Your Honor, if there are no further questions, I thank you for the time this morning. Thank you. Thank you to all counsel. We'll take the case under advisement. Thank you, Your Honor. Thank you.